```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 10-20317 |
| ) | |
| **KENNETH PATTERSON, SR.,** ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Kenneth Patterson's ("Patterson") July 21, 2011 Motion to Suppress. (Mot. to Suppress, ECF No. 23.) The United States of America (the "Government") responded in opposition on September 13, 2011. (Resp. of the United States to Def.'s Mot. to Suppress, ECF No. 28.) On March 30, 2012, the Magistrate Judge issued her Report and Recommendation, recommending that the Court deny Patterson's Motion. (Report and Recommendation, ECF No. 54.) Patterson objected on April 16, 2012. (Objections to Report and Recommendation, ECF No. 55.) The Government responded on April 17, 2012. (Government's Resp. to Def.'s Objections to Report and Recommendation., ECF No. 56.) For the following reasons, the Court ADOPTS the Report and Recommendation of the Magistrate Judge. The Motion to Suppress is DENIED.

**I. Background**

On May 14, 2007, Patterson was released on parole. (Oct. 26, 2011 Hr. Tr. 26-27, ECF No. 48 (Oct. Hr. Tr.).) He signed a Parole Release Certificate containing several conditions. (Id. 27-28.) Patterson "agree[d] to a search, without a warrant, of [his] person, vehicle, property, or place of residence by any probation/parole officer or law enforcement officer, at any time." (Id. 28; Parole Release Certificate for Kenneth Maurice Patterson ¶ 8, ECF No. 28-2.) Patterson's parole was scheduled to terminate in 2013. On July 1, 2009, Patterson was still bound by the terms of his Parole Release Certificate. (Oct. Hr. Tr. 29.)

On July 1, 2009, Memphis Police Department officers Dressels Fox ("Officer Fox") and Kevin Williams ("Officer Williams") were undercover investigating drug complaints at 3071 Parker Road, Memphis, Tennessee. (Id. 41, 86.) Officer Williams had received two complaints, one on July 1 and one approximately two weeks before, that an individual known as "KP" as selling drugs at that address. (Id. 86.) After conducting a search through a utility company's records, Officer Williams learned that the address was Patterson's. (Id. 87.) Officer Williams believed that Patterson was on parole and relayed that information to Officer Fox. (Id. 101-02.)

Officer Williams drove to Patterson's address, where he observed several males, including a known user of crack cocaine, on the street outside. (Id. 88-89.) Officer Williams alerted Officer Fox and others to let them know that there was activity at the house. (Id. 89.) Officers Fox and Williams then established surveillance on the house. (Id. 90.) They observed a female, later identified as Freddie Ball ("Ball"), leave the residence, and one of the officers asked that she be stopped as she drove away. (Id. 47, 91-02.) Ball was stopped, and Officer Fox went to the stop and spoke with Ball, who agreed to assist the officers with a "knock and talk." (Id. 47, 49, 93.) When Ball knocked on the door, Officer Fox stood out of view on the side of the house. (Id. 48-49.) Officer Williams observed the scene from his surveillance post. (Id. 93.) When Ball opened the door, Fox heard someone say "[Y]ou're back again, you just left." (Id. 53.) Officer Fox then approached the door and identified himself to Patterson, who had answered the door, as a Memphis Police Officer. (Id. 56.) Fox then observed "a piece of what appeared to be crack rock" on the floor between the storm door and the main door. (Id. 56.) He also saw what appeared to be pieces of crack rock and an open bag of crack rock on the living room table in plain view from the door. (Id. 60.)

When Officer Fox appeared at the door, a male in the living room got up and ran to the back of the house. Officer Fox did not enter due to concern for his safety. (Id. 61.) He used his earpiece Bluetooth to tell the other officers to enter the premises, hoping to subdue the man who had run before he could destroy evidence or obtain a firearm. (Id. 76, 93, 95.) Once Officer Fox entered the home, he saw some people on the floor and some sitting in chairs. (Id. 62.) He remained in the front of the home, but other officers pursued the male who had run to the back and returned him to the front of the home. (Id. 64-65.)

With the house secure, Officer Williams entered the residence. (Id. 96.) He asked Patterson, who was on the floor, to get up and presented him with a Consent to Search Form. (Id.) Officer Williams informed Patterson that the police were there because of complaints that Patterson was selling drugs from the house, and Officer Williams testified that Patterson said, "you can search the house, I'm on parole, I mean, I can't stop you from searching anyway." (Id. 99.) Patterson signed the consent form. (Id.) The officers searched the residence, during which they found, underneath a pillow in Patterson's bedroom, a paper lunch bag that contained two large crack rocks and one bag of powder cocaine. (Id. 81, 105-106; Consent to Search 2, ECF No. 28-1.) The cocaine observed in the living

4

room amounted to 68 rocks of crack cocaine from the bag on the living room table and one rock from the living room floor. (Consent to Search 2.)

The Magistrate Judge concluded that the cocaine on the floor and on the table should not be suppressed because it was in plain view and, in any event, its seizure was justified by exigent circumstances. (Report and Recommendation 5-7.) She also concluded that, under the conditions of Patterson's parole, he had agreed to a search without a warrant. (Id. 8.) The Magistrate Judge concluded that, even if the Parole Release Certificate had not permitted a search, the consent to search form and Patterson's statements would constitute valid consent. (Id. 9.) Patterson objects to the Magistrate Judge's conclusions.

**II. Review of Report and Recommendation**

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted). The district court need not review—under a de novo or any other standard—those aspects of a magistrate judge's report and recommendation to which no specific objection is made. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985); United States v. Robinson, 352 F. App'x 27, 28-29 (6th Cir. 2009).

**III. Analysis**

Patterson does not contest his parolee status or that the Parole Release Certificate is valid. "[T]he warrant and probable cause requirements generally do not apply to the searches of parolees, probationers, or their residences." United States v. Smith, 526 F.3d 306, 308 (6th Cir. 2008). The Parole Release Certificate provided that Patterson agreed "to a search, without a warrant, of [his person, vehicle, property or place of residence . . . at any time." (Parole Release Certificate ¶ 8.) "[Patterson] signed an order submitting to the condition and thus was unambiguously aware of it." Samson v. California, 547 U.S. 843, 852 (2006) (citation omitted). He voluntarily agreed to a "substantially diminished expectation of privacy," and so "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search" of his residence. Id. at 855-56. His status as a parolee and his Parole Release Certificate's terms establish that, even if the officers had neither probable cause nor reasonable suspicion to search his home, the search would have been constitutional. United States v. Lopez, 474 F.3d 1208, 1214 (9th Cir. 2007). The Magistrate Judge concluded that the search would have been valid even if Patterson had not been a parolee.

Patterson raises several factual objections. He asserts that the Magistrate Judge erroneously referred to the incident

6

as a "knock and talk". (Objection 1.) Although Patterson does not discuss the significance of this reference, the Court construes Patterson's argument to be that this was a confrontational, hostile situation and not a consensual encounter that the Sixth Circuit has recognized as a legitimate investigative technique. United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005).

Patterson's objection is not well taken. The Magistrate Judge stated that Officer Fox asked Ball to assist with a "knock and talk". (Report and Recommendation 2.) Officer Fox testified that "it was a knock and talk situation," but that he "didn't actually have to knock on the door" because it was opened for Bell. (October Tr. 48.) When the door was opened, Officer Fox showed his badge and announced his presence at the door. (Id. 54.) He intended to talk with Patterson, but the flight to the back of the house by one of the people inside interrupted his plan. The Magistrate Judge, who was in the best position to determine Fox's credibility, found him believable. See United States v. Freeman, 412 F. App'x 735, 743 (6th Cir. 2010). Patterson has offered no reason to overturn the Magistrate Judge's finding. Officer Fox intended to engage in a knock and announce once he was certain that Patterson was at home and would answer the door.

7

Patterson also asserts that Officer Fox did not identify himself as an officer and entered the house before any one tried to flee. Because of the officer's unlawful trespass, Patterson argues that the crack rocks in the living room were not lawfully seized under the plain view doctrine because the officer was not lawfully in the house. (Objection 2; Mot. 5-6.) This argument is not well taken.

Officer Fox testified that he "approached the door at that time . . . and identified myself, . . . as a Memphis police officer." (October Hr. Tr. 54.) Patterson relies on Officer Fox's testimony that, after identifying himself, "I stepped into – to the home." In the next line of the transcript, Officer Fox testified, "[a]s I approached the door, I identified myself as a police officer, I observed the floor--." (Id.)

The Magistrate Judge, who observed Officer Fox, found his statement that he did not enter the house alone or before he saw someone flee because of his presence credible. (Id. 61.) Officer Williams saw Officer Fox speak with Patterson and contact the other officers to enter the premises. (Id. 95.) The Magistrate Judge enjoyed the benefit of first-hand observation that the written record cannot re-create. Patterson provides "no compelling reason to second-guess the magistrate judge's decision." Peveler v. United States, 269 F.3d 693, 702 (6th Cir. 2001); see also United States v. Robinson, No. 1:07-

CR-1, 2007 U.S. Dist. LEXIS 53290, at *1 (E.D. Tenn. July 23, 2007).

Patterson argues that no exigency justified a search. He asserts that there was no testimony that anyone fled at the officer's presence and that the officers took advantage of the exigent situation they created when they appeared at Patterson's home.

Patterson objects to the Magistrate Judge's holding that the male who ran to the back of the house when Officer Fox announced his presence appeared to be fleeing. (Objection 2.) Officer Fox testified that, when he announced his presence at the door, "a male inside the home . . . suddenly got up and ran to the back of the house." (October Hr. Tr. 61.) Officer Fox also testified that the he believed the male "was attempting to destroy drugs or evidence or obtain a firearm." (Id. 76.) Patterson has provided no reason to doubt this testimony, and either of Fox's concerns justifies an exigent search of the premises. United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2006).

Patterson contends that the officers unlawfully created the exigent circumstances on which the Government relies because Officer Fox's appearance at the door "created the circumstances for which the individual got up and went to the back of the house." (Objection 3.) Officers cannot, "through an illegal

9

search, create the exigent circumstances that would then justify entry." United States v. Hernandez, 392 F. App'x 350, 353 (5th Cir. 2010); accord United States v. Ponder, 240 F. App'x 17, 21 (6th Cir. 2007). "In determining whether officers create an exigency," a court "focuses on the 'reasonableness of the officers' investigative tactics leading up to the warrantless entry.'" United States v. Gomez-Moreno, 479 F.3d 350, 355 (5th Cir. 2007) (quoting United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001)). To establish that an officer "created an exigent situation usually requires a showing of 'deliberate conduct on the part of the police evincing an effort to intentionally evade the warrant requirement.'" Ponder, 240 F. App'x at 21 (quoting Ewolski v. City of Brunswick, 27 F.3d 492, 504 (6th Cir. 2002).

In the present case, an officer came to the door and identified himself. He was "mak[ing] [an] investigative inquiry" and intended only to ask questions. Id. There is no indication that the officers engaged in any deliberate conduct to create an exigent situation. The exigency "naturally arose when [Fox] observed" a male fleeing to the back of the house. Ponder, 240 F. App'x at 21. When the individual fled, Officer Fox had a "reason to believe that there was a danger of violence," and it "was not created solely by the officers' conduct." Ewolski, 287 F.3d at 504.

There was also a danger that the drugs Officer Fox saw in the house, or other drugs, might be destroyed. See United States v. Aguirre, 664 F.3d 606, 611-12 (5th Cir. 2011) (denying suppression because officers testified they searched a house during a "knock and talk" when, in response to their knock, they heard noise that indicated that evidence was being destroyed). When the man stood up and ran to the back of the house, Officer Fox had already observed cocaine on the table and the floor. "[L]aw enforcement officers are aware that there is a high probability that persons in possession of drugs will attempt to destroy them." Id. at 612. The exigent circumstances were not created by Officer Fox, and they justified the search. United States v. Cisneros-Gutierrez, 598 F.3d 997, 1006 (8th Cir. 2010); accord United States v. Sangineto-Miranda, 859 F.2d 1501, 1513 (6th Cir. 1998) (upholding a warrantless search when police officers feared that delaying entry into an apartment "would have risked the loss of evidence").

Once the officers lawfully entered the house to prevent the destruction of evidence and to subdue the man, they "could lawfully seize any object in plain view so long as the object's incriminating character was immediately apparent." United States v. Atchley, 474 F.3d 840, 850 (6th Cir. 2007). "[P]art of the inquiry into whether it is 'immediately apparent' that an item is inherently incriminating is whether 'the officers

11

executing can at the time of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature.'" United States v. Estes, 343 F. App'x 97, 101 (6th Cir. 2009) (quoting United States v. McLevain, 310 F.3d 434, 441 (6th Cir. 2002)) (emphasis removed). An "officer's knowledge" may play a role in this determination. Id. Officers do not need to "know that the evidence is contraband . . . 'probable cause . . . merely requires that the facts available . . . would warrant a man of reasonable caution [to believe] that certain items may be contraband. . . or evidence of a crime.'" McLevain, 310 F.3d at 441 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)) (emphasis in original). The issue is "whether the intrinsic nature or appearance of the seized object gives probable cause to believe that it is associated with criminal activity." Estes, 343 F. App'x at 101. "The 'immediately apparent' standard 'does not demand an unduly high degree of certainty.'" United States v. Lawson, No. 05-5598, 2006 U.S. App. LEXIS 14201, at *12 (6th Cir. June 5, 2006) (quoting United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir. 1997)).

Although Patterson argues that the incriminating nature of the crack rock by the door was not immediately apparent, Officer Fox determined what the crack rock on the floor by the door was what it was, and not some other substance, because of "[his]

12

prior dealings with crack cocaine," including time on the Memphis Police Department's Organized Crime Unit. (October Hr. Tr 58-59.) An officer may rely on his training and experience to determine whether an object has an incriminating nature. United States v. Raines, 243 F.3d 419, 422 (8th Cir. 2001); accord United States v. Brown, No. 1:07-CR-16-M, 2007 U.S. Dist. LEXIS 58958, at *7 (W.D. Ky. Aug. 9, 2007). The crack cocaine on the floor and on the living room table was in plain view and lawfully seized when the officers entered due to exigent circumstances.

Patterson also asserts that he did not voluntarily consent, but signed the consent form under duress. (Objection 3.) Having found that the crack in the living room was admissible due to exigent circumstances, the only evidence that would be excluded if Patterson had not consented (and had not been a parolee) would be the evidence found under his pillow.[1]

"'A search may be conducted without a warrant if the person with a privacy interest in the place to be searched gives free and voluntary consent. A court will determine whether consent is free and voluntary by examining the totality of the circumstances.'" United States v. Elkins, 300 F.3d 638, 647 (6th Cir. 2002) (quoting United States v. Riascos-Suarez, 73

---

[1] The transcript of the hearing before the Magistrate Judge indicates that everyone was in front and detained by police officers when the consent form was signed. (Oct. Hr. Tr. 64.) The Court assumes without deciding that the exigent circumstances had ended when the Consent to Search Form was signed.

13

F.3d 616, 625 (6th Cir. 1996)). Patterson signed a Consent to Search Form. (Consent to Search 1.) He also stated "you can search the house, I'm on parole, I mean, I can't stop you from searching anyway." (October Hr. Tr. 99.) The search of the home did not start until Patterson signed the consent form. (Id.) He validly consented to the search.

Patterson argues that the request for consent was coercive and that the entry was unlawful. The entry was constitutional. A party may lawfully consent to a search after he has been lawfully seized or arrested. See, e.g., United States v. Fletcher, 295 F. App'x 749, 752 (6th Cir. 2008) (noting a defendant consented to a search after being arrested); United States v. Nappier, 155 F. App'x 859, 867 (6th Cir. 2007) (affirming a party may consent to a search after being arrested); United States v. Burns, 298 F.3d 523, 541 (6th Cir. 2002) (same). Patterson was "familiar with the legal system." Elkins, 300 F.3d at 648 n.7. He knew what his rights were and that he did not have to sign the consent form. There is no sign of duplicity or coercion in securing his consent to search. His consent was valid, and the search of his bedroom was constitutional.

**IV. CONCLUSION**

For the foregoing reasons, Patterson's objections are not well taken. All findings and conclusions of the Magistrate

14

Judge not discussed above have not been specifically objected to and are ADOPTED.  The Court ADOPTS the Report and Recommendation of the Magistrate Judge and DENIES the Motion to Suppress.

So ordered this 30th day of July, 2012.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE